500 So.2d 572 (1986)
William STONE, Appellant,
v.
STATE of Florida, Appellee.
No. 85-2750.
District Court of Appeal of Florida, Second District.
December 3, 1986.
Rehearing Denied January 13, 1987.
*573 James Marion Moorman, Public Defender and William H. Pasch, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Joseph R. Bryant, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
William Stone was convicted of aggravated battery with a firearm. He appeals his sentence and the imposition of costs. We affirm his conviction but find merit in two of his points on appeal. Accordingly, we reverse in part and remand for a hearing on costs.
Stone's first point on appeal is that notations at the bottom of a scoresheet are insufficient to meet the requirements of Florida Rule of Criminal Procedure 3.701(d)(11). We find no merit in this point. The sentencing judge signed the scoresheet in question, and the reasons for departure were legibly handwritten under the heading "Reasons for Departure." The purpose of a writing is to allow effective appellate review. State v. Jackson, 478 So.2d 1054 (Fla. 1985). The notations in the case at hand are sufficient.
Stone's second point on appeal is that the sentencing court imposed costs pursuant to sections 943.25(4) and (8) and 960.20, Florida Statutes (1985), without notice or a hearing. Stone was declared indigent four months prior to the imposition of the sentence. As an indigent, he should have been afforded a hearing before costs were imposed. Jenkins v. State, 444 So.2d 947 (Fla. 1984); Burrow v. State, 487 So.2d 77 (Fla. 2d DCA 1986). We reverse the trial court's imposition of costs pursuant to these sections and remand for a hearing in accordance with Jenkins.
Stone's third point on appeal is that section 27.3455, Florida Statutes (1985), as applied to him violates ex post facto provisions of the United States Constitution and the Florida Constitution. The crime of which Stone was convicted occurred on June 15, 1985. Section 27.3455, Florida Statutes became effective July 1, 1985. Stone argues that the imposition of $200.00 court costs constitutes an additional penalty and, as such, cannot constitutionally be applied to him. This issue has been raised repeatedly in this district and in other districts[1] The first case to decide this issue *574 was Yost v. State, 489 So.2d 131 (Fla. 5th DCA 1986). Under similar facts, the fifth district held that the statute violated ex post facto restrictions, and certified the following question to the Florida Supreme Court:
DOES THE APPLICATION OF SECTION 27.3455, FLORIDA STATUTES (1985), TO CRIMES COMMITTED PRIOR TO THE EFFECTIVE DATE OF THE STATUTE VIOLATE THE EX POST FACTO PROVISIONS OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF FLORIDA, OR DOES THE STATUTE MERELY EFFECT A PROCEDURAL CHANGE AS IS PERMITTED UNDER STATE V. JACKSON, 478 So.2d 1054 (FLA. 1985)?
The certified question in Yost is currently pending before the Florida Supreme Court. State v. Yost, No. 68,949 (Fla. June 19, 1986). Recently, this court certified an identical question concerning this issue. Bowman v. State, 495 So.2d 868 (Fla. 2d DCA 1986). We follow the Bowman decision and reverse that portion of the judgment in this case imposing court costs of $200.00. We also certify the above question to the Florida Supreme Court as a question of great public importance.
Stone's fourth point on appeal also concerns section 27.3455. He claims that the trial court erred in imposing costs rather than community service because Stone is indigent. Because we have held that the statute is unconstitutional in this case as applied to Stone, we do not reach this point on appeal. The case is remanded for a hearing on costs pursuant to sections 943 and 960, Florida Statutes (1985), and for correction of the sentence by deleting the imposition of costs pursuant to section 27.3455, Florida Statutes (1985).
Affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.
GRIMES, A.C.J., and HALL, J., concur.
RYDER, J., specially concurs.
RYDER, Judge, specially concurring.
I concur to avoid conflict with another panel of this court. I specially concur because had I been writing on a clean slate, I would have upheld the statute against an ex post facto attack. The reasoning for my position is set forth below.
The Yost decision  and all the subsequent cases following it  begins with an assumption. The assumption is that the costs imposed by section 27.3455, Florida Statutes (1985), constitute a penalty. I believe the assumption to be incorrect.[1]

United States Supreme Court's Tests for Purpose of a Statute.
The characterization of costs is hard to achieve. Costs do not fall in the traditional notion of punishment as do fines or imprisonment. The United States Supreme Court has noted that the problem of the characterization of sanctions "has been extremely difficult and elusive of solution" at times. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963). The Supreme Court has listed the tests traditionally applied to determine whether a statute is penal or regulatory in nature:
Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative *575 purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Absent conclusive evidence of Congressional intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face. [Footnotes omitted]
Id. at 168, 169, 83 S.Ct. at 567, 568. A valuable source in determining Congressional intent is the legislative history of an act. The federal system has the luxury of published, extensive legislative histories of Congressional acts. The Florida system affords no such creature comforts. Researching the history of Florida legislative enactments is cumbersome, time consuming and often fruitless. The task of discerning legislative intent is always made easier when indications of that intent can be gleaned from the statute itself. It is fortunate that the statute in question here has a few kernels of intent.

Section 27.3455, Florida Statutes (1985).
Section 27.3455 imposes costs of $200.00 upon anyone who pleads guilty or nolo contendere or is found guilty of a felony. Guilty adjudications for misdemeanors and criminal traffic offenses have costs imposed of $50.00. The statute is self-enforcing in that gain time accrued is not granted or awarded until the costs are paid in full. In addition, the statute provides that persons found indigent can "work off" the costs imposed by performing community service. The hours worked in community service are multiplied by the minimum wage and that amount is subtracted from the costs imposed until the costs are paid in full. Gain time is not withheld from indigents. An indigent must "work off" the costs imposed immediately after being released from incarceration.
The funds collected are to be distributed to specific state agencies in the following priority: (1) to the governmental unit which provides services as outlined by statute to the state attorney and public defender; (2) through the medical examiner's commission to the Board of County Commissioners to supplement the actual cost of operations and services of medical examiners; and (3) through the Bureau of Crimes Compensation to counties with a comprehensive victim witness program which meets the Bureau's standards. § 27.3455(2), Fla. Stat. (1985). The fact that the bulk of the funds generated by this statutory section go to support the services of the state attorney and public defender indicates that the costs are not imposed as punishment but are levied to support those specific programs in the criminal justice system. In contrast, a fine imposed as punishment pursuant to section 775.083, Florida Statutes (1985), is placed into a government's general operating fund. The distribution of the proceeds of a fine need only "further a legitimate public purpose" to be proper. State v. Champe, 373 So.2d 874, 878 (Fla. 1978) (upholding as constitutional the Crimes Compensation Act).
The contrast between costs and fines is illustrated further by their placement in Florida Statutes. The costs provision is found in Chapter 27, a chapter dealing with state attorneys, public defenders and related offices. On the other hand, the fines provision is located in Chapter 775, a chapter dealing with the state of Florida's penalties for crimes committed in its jurisdiction.
Another kernel of intent can be gleaned from the law as it was enacted. By constitutional mandate, "every law shall embrace but one subject and the matter properly connected therewith... ." Art. III, § 6, Fla. Const. Chapter 85-213, Laws of Florida, is the enacting law for the statute in question. It amends certain sections of Chapter 27 by requiring the county to pay for certain services for state attorneys and public defenders. It creates the section before us today as a means for the county to generate revenue to pay for these increased services.[2]

*576 Traditional Tests for Purpose.

I now return to the other tests listed by the Supreme Court in its Mendoza-Martinez opinion. The imposition of costs cannot be viewed as "an affirmative disability or restraint." The sanction is a mere loss of $200.00 or an equivalent amount of community service. The imposition of costs has not "historically been regarded as a punishment."[3]
The next test "whether it comes into play only on a finding of scienter," points toward a finding that costs are a penalty. Under the statute, costs are only assessed against convicted defendants. Innocents have always been excused from paying the costs of criminal prosecutions. This is probably based on the assumption that innocents have paid enough "social costs" prior to their acquittal. But a review of the cases cited in support of this test indicate that this test is traditionally used to distinguish between a penalty and a tax. Accordingly, I attribute less weight to this test in my analysis.
The next test is whether the imposition of costs will promote the traditional aims of punishment  retribution and deterrence. Viewed technically, costs are used to retribute the county for the expense of prosecuting the individual. But retribution should be used in a much broader sense. It is to reprimand the wrongdoer and make him pay society for violating its laws. Paying costs are not sufficient retribution to society. Furthermore, the imposition of costs would not have a deterring effect. An easy way to determine possible deterrence is to view the sanction as the sole punishment for a crime. For example, a person would be deterred from committing a felony in the first degree by knowing that if convicted, he could serve up to thirty years in prison. Also, a person would be deterred from committing a felony of the first degree knowing the sole punishment was a fine of $10,000.00. Clearly, few people would be deterred from committing a first degree felony if the sole punishment was the imposition of $200.00 costs.
Next, the behavior to which the statute applies is already a crime. Punishment for those crimes  both imprisonment and fines  has been laid out by other statutory sections. Imposing costs does not add to that punishment.
As set out above, an alternative purpose to which it is rationally connected is assignable to the imposition of costs. It is to provide revenue to the counties for services the counties are required to provide. The amount imposed is not excessive in relation to this purpose but is clearly relative to the seriousness of the offense adjudicated.

*577 Conclusion.

After looking at the statute itself, the law enacting it, and the several tests traditionally used by the United States Supreme Court to determine whether a sanction is punishment, I come to the conclusion that the costs imposed by this section are not a penalty. The legislative intent gleaned from the statute itself points to that conclusion. Nearly every traditional test points to that conclusion. To conclude otherwise would go against years of United States Supreme Court opinions: the primary elucidator of this country's ex post facto constitutional provision.

Florida Case Law.
My conclusion that costs are not a penalty is consistent with Florida Supreme Court case law as well. In Ivory v. Wainwright, 393 So.2d 542 (Fla. 1980), the supreme court upheld a statute against an ex post facto attack. The statute under attack, section 944.485, Florida Statutes (Supp. 1978), "requires, as a condition of parole eligibility, that prisoners disclose their assets and income, and that they be assessed the costs of their subsistence in prison." Ivory at 543. The Florida Supreme Court rejected the ex post facto argument. They stated that the argument presumes that the section increases punishment, but that presumption is mistaken because the purpose of the statute is not punitive. Ivory at 544 (citing Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)). Likewise, the purpose of section 27.3455 is not punitive. Its purpose is to fund programs directly related to the administration of justice in our state. Thus, I respectfully concur but would have upheld section 27.3455 as constitutional.
NOTES
[1] Davis v. State, 495 So.2d 928 (Fla. 4th DCA 1986); Ivie v. State, 497 So.2d 931 (Fla. 2d DCA 1986); Bowman v. State, 495 So.2d 868 (Fla. 2d DCA 1986); Bennett v. State, 495 So.2d 239 (Fla. 5th DCA 1986); Slaughter v. State, 493 So.2d 1109 (Fla. 1st DCA 1986) [consolidating sixteen cases]; Miller v. State, 492 So.2d 1191 (Fla. 5th DCA 1986); Gordon v. State, 497 So.2d 661 (Fla. 5th DCA 1986); Williams v. State, 492 So.2d 784 (Fla. 5th DCA 1986); Signorelli v. State, 491 So.2d 349 (Fla. 4th DCA 1986); Moseley v. State, 491 So.2d 336 (Fla. 3d DCA 1986); McDowell v. State, 491 So.2d 594 (Fla. 5th DCA 1986); Freeney v. State, 493 So.2d 9 (Fla. 5th DCA 1986); Williams v. State, 492 So.2d 1098 (Fla. 5th DCA 1986); Robinson v. State, 488 So.2d 925 (Fla. 5th DCA 1986); Yost v. State, 489 So.2d 131 (Fla. 5th DCA 1986).
[1] Clearly, the remainder of the analysis in Yost is correct. If costs are a penalty, then the imposition of more onerous costs upon a defendant convicted of a crime which occurred prior to the effective date of the statute violates ex post facto provisions.
[2] The enactment provides that the section before us today is to be repealed effective October 1, 1988. Ch. 85-213, § 3, Laws of Fla. It is not clear from the face of the statute why the legislature included this section repealing the statute three years and three months after the effective date. The legislature's intent to make this section temporary does not affect adversely my analysis. If anything, it supports my analysis. Punishment for crimes are usually not enacted on a temporary basis.
[3] It is important here to note an apparent conflict of this statute with chapter 939, Florida Statutes (1985). The state's authority to assess costs dates back to December 29, 1846. Ch. 76, Laws of Fla. (1846). Section 1 of the 1846 act stated "That in all cases of a conviction for crimes or misdemeanors under the laws of this state, the costs of prosecution shall be included and entered up in the judgment rendered against the convicted person, unless the jury trying the cause expressly find otherwise." This provision, slightly modified, is currently codified as section 939.01, Florida Statutes (1985). Section 2 of the 1846 act stated, "That in all cases not capital, when it shall be made to appear from due proof made in open court, that the person convicted is wholly unable to pay costs, and that the judgment has in other respects been complied with, the court before which such person was convicted shall have power to discharge him or her without the payment of costs." This provision, barely modified, is currently codified as section 939.05, Florida Statutes (1985). Historically, since 1846 the state has had the authority to assess against a convicted non-indigent defendant the costs of prosecution ($200.00 or otherwise). Indigents convicted of a crime have been able to be discharged from the payment of the costs of prosecution since 1846. If the Yost assumption is correct (i.e., costs are a penalty), then the statute would only violate ex post facto provisions as to indigent defendants. Non-indigent defendants have always been required to pay costs.